# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Consolidated with: 19-40643

HTC CORPORATION; HTC AMERICA, INCORPORATED,

*Plaintiffs-Appellants,*

v.

TELEFONAKTIEBOLAGET LM ERICSSON; ERICSSON, INCORPORATED,

*Defendants-Appellees*

Appeal from the United States District Court for the
Eastern District of Texas in Case No. 6:18-cv-00243-JRG

## APPELLANTS' OPENING BRIEF

David J. Burman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:   (206) 359-8426
E-mail:  DBurman@perkinscoie.com

T. Andrew Culbert
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:   (206) 359-3627
E-mail:  ACulbert@perkinscoie.com

Jennifer Haltom Doan
HALTOM & DOAN
6500 N. Summerhill Road, Suite 100
Texarkana, Texas 75503
Phone:   (903) 255-1000
E-mail:  jdoan@haltomdoan.com

Kevin A. Zeck
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:   (206) 359-3002
E-mail:  KZeck@perkinscoie.com

Andrew T. Dufresne
PERKINS COIE LLP
33 E. Main Street, Suite 201
Madison, Wisconsin 53703
Phone:   (608) 663-7492
E-mail:  ADufresne@perkinscoie.com

*Counsel for Plaintiffs-Appellants HTC Corp. and HTC America, Inc.*

October 10, 2019

---

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

Consolidated with: 19-40643

## HTC CORPORATION; HTC AMERICA, INCORPORATED,

*Plaintiffs-Appellants,*

v.

## TELEFONAKTIEBOLAGET LM ERICSSON; ERICSSON, INCORPORATED,

*Defendants-Appellees*

---

Appeal from the United States District Court for the
Eastern District of Texas in Case No. 6:18-cv-00243-JRG

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

***Plaintiffs-Appellants***

1. HTC Corporation has no parent corporation, and no publicly held corporation owns 10% or more of its stock
2. HTC America, Inc., is a wholly owned subsidiary of HTC Corporation

**Counsel for Plaintiffs-Appellants**

T. Andrew Culbert
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:     (206) 359-8000
E-mail:    ACulbert@perkinscoie.com

David Chiappetta
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone:     (415) 344-7076
E-mail:    DChiappetta@perkinscoie.com

Kristine Beaudoin
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Phone:     (602) 351-8395
E-mail:    KBeaudoin@perkinscoie.com

Andrew T. Dufresne
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
Phone:     (608) 663-7460
E-mail:    ADufresne@perkinscoie.com

Jennifer Haltom Doan
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
Phone:     (903) 255-1000
E-mail:    jdoan@haltomdoan.com

Susan E. Foster
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:     (206) 359-8000
E-mail:    SFoster@perkinscoie.com

Adam G. Hester
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304
Phone:     (650) 838-4311
E-mail:    AHester@perkinscoie.com

Andrew N. Klein
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304
Phone:     (650) 838-4409
E-mail:    AKlein@perkinscoie.com

Dan L. Bagatell
PERKINS COIE LLP
3 Weatherby Road
Hanover, New Hampshire 03755
Phone:     (202) 654-3327
E-mail:    DBagatell@perkinscoie.com

David J. Burman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:     (206) 359-8426
E-mail:    DBurman@perkinscoie.com

Jessica Everett-Garcia
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Phone:     (602) 351-9165
E-mail:    JEverettgarcia@perkinscoie.com

Jonathan R. Putman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:     (206) 359-3895
E-mail:    JPutman@perkinscoie.com

Joseph E. Bringman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:    (206) 359-8000
E-mail:   JBringman@perkinscoie.com

Kevin A. Zeck
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:    (206) 359-3002
E-mail:   KZeck@perkinscoie.com

Laura K. Hennessey
*Formerly with* PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101

Shylah R. Alfonso
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone:    (206) 359-8000
E-mail:   SAlfonso@perkinscoie.com

Thomas N. Millikan
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, California 92130
Phone:    (858) 720-5700
E-mail:   TMillikan@perkinscoie.com

Cole A. Riddell
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
Phone:    (903) 255-1000
E-mail:   criddell@haltomdoan.com

Joshua R. Thane
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
Phone:    (903) 255-1000
E-mail:    jthane@haltomdoan.com

James C. Yoon
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304
Phone:    (650) 493-9300
E-mail:    jyoon@wsgr.com

Olivia M. Kim
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Phone:    (323) 210-2904
E-mail:    okim@wsgr.com

Martin R. Bader
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Phone:    (858) 720-8900
E-mail:    mbader@sheppardmullin.com

Matthew W. Holder
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Phone:    (858) 720-7411
E-mail:    mholder@sheppardmullin.com

Stephen S. Korniczky
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
Phone:    (858) 720-8900
E-mail:    skorniczky@sheppardmullin.com

***Defendants-Appellees***

1. Telefonaktiebolaget LM Ericsson
2. Ericsson, Inc.

**Counsel for Defendants-Appellees**

Laurie LaVigna Fitzgerald
*Formerly with* MCKOOL SMITH, PC
300 West 6th Street, Suite 1700
Austin, TX 78701
512/692-8723
Email: lfitzgerald@mckoolsmith.com

Nicholas Mathews
MCKOOL SMITH, PC
300 Crescent Club, Suite 1500
Dallas, TX 75201
214-978-4914
Email: nmathews@mckoolsmith.com

Theodore Stevenson, III
MCKOOL SMITH, PC
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4974
Email: tstevenson@mckoolsmith.com

Jeffrey A. Lamken
MOLOLAMKEN LLP
600 New Hampshire Ave NW, Suite 660
Washington, DC 20037
202-556-2010
Email: jlamken@mololamken.com

Blake H. Bailey
MCKOOL SMITH, PC
600 Travis, Suite 7000
Houston, TX 77002
713-485-7300
Email: bbailey@mckoolsmith.com

Charles E. Fowler, Jr.
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-6361
Email: cfowler@mckoolsmith.com

Chelsea Priest
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-6363
Email: cpriest@mckoolsmith.com

Christine Michelle Woodin
MCKOOL SMITH, PC
300 W 6th St, Suite 1700
Austin, TX 78701
512-692-8750
Email: cwoodin@mckoolsmith.com

Erik Bruce Fountain
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-4000
Email: efountain@mckoolsmith.com

Frank Charles Vecella
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-4000
Email: fvecella@mckoolsmith.com

Jonathan Nathanial Powers
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-4088
Email: jpowers@mckoolsmith.com

Kevin Lee Burgess
McKool Smith, PC
300 W 6th St, Suite 1700
Austin, TX 78701
512-692-8704
Email: kburgess@mckoolsmith.com

Kevin Hess
McKool Smith, PC
300 West 6th Street, Suite 1700
Austin, TX 78701
512-692-8749
Email: khess@mckoolsmith.com

Marcus Lewis Rabinowitz
McKool Smith, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-4074
Email: mrabinowitz@mckoolsmith.com

Rayiner I. Hashem
MoloLamken LLP
600 New Hampshire Ave NW, Suite 660
Washington, DC 20037
202-556-2024
Email: rhashem@mololamken.com

Samuel Franklin Baxter
McKool Smith, PC
104 East Houston St., Suite 300
Marshall, TX 75670
903-923-9000
Email: sbaxter@mckoolsmith.com

Warren Henry Lipschitz
McKool Smith, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
214-978-4973
Email: wlipschitz@mckoolsmith.com

Dated: October 9, 2019          s/ David J. Burman
                                David J. Burman

*Attorney of Record for Plaintiffs-Appellants*
*HTC Corporation and HTC America, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

HTC respectfully submits that oral argument is appropriate and will be helpful to the Court. This appeal involves a lengthy and complex record developed during a weeklong jury trial and extensive post-trial briefing. The issues center on proper standards for evaluating compliance with a patentee's contractual obligation to offer "fair, reasonable, and non-discriminatory" (FRAND) terms when licensing standard-essential patents. To counsel's knowledge, the issue of FRAND compliance has not previously come before this Court.

Dated: October 9, 2019        s/ David J. Burman
                                               David J. Burman

Statement Regarding Oral Argument ....................................................x

Table of Authorities ....................................................................xiv

Table of Abbreviations and Conventions .......................................... xviii

Introduction.................................................................................1

Jurisdiction .................................................................................2

Statement of Issues........................................................................3

Statement of the Case......................................................................4

    I.    Ericsson owns standard-essential patents and agreed to license
         those patents on fair, reasonable, and non-discriminatory
         (FRAND) terms ......................................................................4

         A.    Product-compatibility standards result from industry
               collaboration .......................................................................4

         B.    Because standards result from collaboration among
               competitors, special rules apply to licensing of standard-
               essential patents ...................................................................5

         C.    Licensors and licensees have vigorously disputed the proper
               methods for calculating FRAND royalties .........................................8

    II.    The present dispute between HTC and Ericsson......................................12

    III.  HTC's declaratory judgment action to enforce Ericsson's
         contractual obligation to license its SEPs on FRAND terms...................14

         A.    The district court severed and stayed all of HTC's claims
               except those concerning forward-looking license terms .................16

          B.    Ericsson focused on the value of cellular connectivity in
               general rather than the independent value of its SEPs .....................16

          C.    The district court refused to allow HTC to explain the
               rationale for its counteroffer to Ericsson or to reference the
               authorities supporting its proposal..................................................17

D.   The district court refused to give the jury substantive
     instructions for determining FRAND royalties ................................17

E.   A confused jury issued a mixed verdict............................................18

F.   The district court's post-trial orders addressed additional
     claims, declared that Ericsson had offered FRAND-compliant
     terms, and denied further relief..........................................................19

Summary of Argument........................................................................................21

Argument..............................................................................................................24

I.   The district court erred by refusing to instruct the jury on the key
     issues at trial: patent valuation and non-discrimination ...........................24

     A.   Apportioning patent value is critical to evaluating whether
          royalties are "reasonable" under FRAND, and the district
          court erred by disregarding that requirement and instructing
          the jury that no rules applied ...........................................................25

          1.   A reasonable royalty must reflect value attributable to the
               patented invention—and no more.............................................26

          2.   The district court rejected HTC's proper apportionment
               instructions and ignored the issue of valuation entirely ...........29

          3.   The district court's failure to instruct the jury on valuation
               is reversible error ....................................................................31

     B.   The district court similarly failed to instruct the jury on the
          non-discrimination requirement of FRAND .....................................39

          1.   The district court rejected HTC's proposed instruction
               regarding non-discrimination and provided no guidance
               on that issue.............................................................................40

          2.   The district court's refusal to instruct on non-
               discrimination is reversible error ..............................................41

II.     If the Court remands on HTC's breach-of-FRAND claim, it should also remand on Ericsson's related counterclaim for a declaration of FRAND compliance .................................................................................47

III.    The district court committed independent legal error in its post-trial ruling on Ericsson's FRAND counterclaim.......................................49

IV.     The district court erred by excluding opinions from Ericsson's previous expert regarding the royalty terms Ericsson offered to other licensees.........................................................................................53

V.      If the Court vacates and remands on the merits, it should also vacate the prevailing-party determination and costs award ....................58

Conclusion ....................................................................................................59

Certificate of Service

Certificate of Compliance

Certificate of Authority

TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)...................................................................6, 43

*Banc One Capital Partners Corp. v. Kneipper*,
    67 F.3d 1187 (5th Cir. 1995) .............................................24

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)...........................................................48

*Bender v. Brumley*,
    1 F.3d 271 (5th Cir. 1993) .................................................24

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ...........................6, 7, 32, 43

*Colburn v. Bunge Towing, Inc.*,
    883 F.2d 372 (5th Cir. 1989) .............................................38

*Collins v. Wayne Corp.*,
    621 F.2d 777 (5th Cir. 1980) ........................................55, 56

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015) ...................................28, 32

*EEOC v. Manville Sales Corp.*,
    27 F.3d 1089 (5th Cir. 1994) .............................................54

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) .............................*passim*

*Garretson v. Clark*,
    111 U.S. 120 (1884)....................................................26, 27, 32

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
    No. 15-cv-00634 (D. Del. Nov. 7, 2018).........................35

*Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous.*,
    660 F.3d 235 (5th Cir. 2011) .............................................43

*Hinojosa v. Butler*,
    547 F.3d 285 (5th Cir. 2008) .............................................54

*Horton v. Buhrke*,
926 F.2d 456 (5th Cir. 1991) ..............................................................47

*Innovatio IP Ventures, LLC Patent Litig Corp., In re*,
No. 11-cv-9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013)................11, 17, 32

*Johnson v. Sawyer*,
120 F.3d 1307 (5th Cir. 1997) ...........................................................34

*Jowers v. Lincoln Elec. Co.*,
617 F.3d 346 (5th Cir. 2010) ............................................................24

*Kanida v. Gulf Coast Med. Pers. LP*,
363 F.3d 568 (5th Cir. 2004) .......................................................25, 31

*Klier v. Elf Atochem N. Am., Inc.*,
658 F.3d 468 (5th Cir. 2011) ............................................................24

*Koon v. United States*,
518 U.S. 81 (1996).........................................................................24

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ...........................................................27

*Lind v. Aetna Cas. & Sur. Co.*,
374 F.2d 377 (5th Cir. 1967) ............................................................38

*Mathis v. Exxon Corp.*,
302 F.3d 448 (5th Cir. 2002) ............................................................55

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
No. 15-cv-04431 (D.N.J. Sept. 24, 2019)............................................35

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) ("*Microsoft I*") ....................................6, 7

*Microsoft Corp. v. Motorola, Inc.*,
No. C10-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013)
("*Microsoft II*") ......................................................................10, 17

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) ("*Microsoft III*") .........................7, 10, 32

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
    No. 17-cv-00123 (E.D. Tex. Aug. 25, 2018) ........................................35

*Realtek Semiconductor, Corp. v. LSI Corp.*,
    No. 12-cv-3451, 2014 WL 10213343 (N.D. Cal. Feb. 25, 2014).....................35

*Realtek Semiconductor, Corp. v. LSI Corp.*,
    No. 12-cv-3451, 2014 WL 2738226 (N.D. Cal. June 16, 2014) ......................32

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) .............................................................49

*Scarlott v. Nissan N. Am., Inc.*,
    771 F.3d 883 (5th Cir. 2014) .............................................................58

*Sharron Motor Lines, Inc. v. United States*,
    633 F.2d 1115 (5th Cir. 1981) ...........................................................43

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
    Nos. SACV14-341, CV15-2370, 2018 WL 4488286 (C.D. Cal. Sept.
    14, 2018) ....................................................................11, 32, 42

*Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*,
    100 F.3d 429 (5th Cir. 1996) ........................................................37, 38

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ..........................................................34

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed Cir 2014) ..............................................9, 26, 27, 28, 32, 34

**Statutes and Rules**

15 U.S.C. § 1 ..............................................................................2

15 U.S.C. § 2 ..............................................................................2

28 U.S.C. § 1291 .........................................................................3

28 U.S.C. § 1331 .........................................................................2

28 U.S.C. § 1332 .........................................................................2

28 U.S.C. § 1337 .........................................................................2

Federal Rule of Evidence 801(d)(2) .................................................55, 56

## Other Authorities

ABA Section of Antitrust Law, *Handbook on the Antitrust Aspects of Standard Setting* (2d ed. 2011) ..............................................................5

American Intellectual Property Law Association, Model Patent Jury Instructions (2018) ............................................................................29

Federal Circuit Bar Association, Model Patent Jury Instructions (July 2016)........29

Halle, Peter E., & J. Clayton Everett, Jr., 7 *Business & Commercial Litigation in Federal Courts* § 75:38 (4th ed. 2018) .........................................50

Lemley, Mark A., *Intellectual Property Rights and Standard-Setting Organizations*, 90 Cal. L. Rev. 1889 (2002) ......................................................28

United States District Court for the Northern District of California, Model Patent Jury Instructions (Dec. 2018).......................................................29

Wright, Charles A., & Arthur R. Miller, 9C *Federal Practice and Procedure* § 2556 (3d ed. 2019)..........................................................................24

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Ericsson | Telefonaktiebolaget LM Ericsson and Ericsson, Inc., collectively |
| ETSI | European Telecommunications Standards Institute |
| FRAND | fair, reasonable, and non-discriminatory |
| HTC | HTC Corporation and HTC America, Inc., collectively |
| ROA.___ | electronic record on appeal, page ___ |
| SEP | standard-essential patent |
| SSO | standard-setting organization |
| 3GPP | Third Generation Partnership Project |

Companies within an industry often agree to technical standards that make products and services compatible. The standardized features guarantee interoperability, which can benefit consumers. But standardization also poses well-recognized competitive risks, especially when individual companies hold patent rights that could prevent other companies from using a widely adopted standard. Standard-setting organizations thus have long insisted that participating patent owners promise to license everyone seeking to practice a standard on "fair, reasonable, and non-discriminatory" (FRAND) terms. FRAND licensing plays a crucial pro-competitive role in ensuring that the benefits of standardization accrue to consumers and the economy, not just to the companies drafting the standards. But FRAND obligations must be enforced to have their intended effect.

Companies that offer networked products must comply with standards to guarantee interoperability and achieve competitive success in their industries. As such products have become more prevalent, patent owners subject to FRAND obligations have increasingly faced suits challenging their licensing practices as unfair, unreasonable, or discriminatory. A royalty is *reasonable* only when it reflects the value of the patented improvement, which requires "apportioning" that value from other features of a product. And the *non-discrimination* requirement forbids patent owners from discriminating against similarly situated licensees. But the contours of

both requirements are not intuitively obvious to lay jurors. Proper jury instructions are critical.

In this case, HTC, which designs and sells smartphones, accused Ericsson, owner of standard-essential patents, of refusing to license on FRAND terms. At trial, the district court prevented the jury from properly evaluating the merits by keeping it in the dark on key issues, including the legal standards that govern whether a license is reasonable and what qualifies as discriminatory under FRAND. To make matters worse, the court told the jury that no rules applied. Its instructions contradicted established law and left the jury adrift, and district court's post-trial rulings and evidentiary rulings compounded those errors. This Court should vacate the judgment, provide guidance on the correct standards for evaluating FRAND compliance, and remand for a new trial before a properly instructed jury.

## JURISDICTION

HTC's complaint alleged that this action arose between citizens of different states, that the controversy exceeded $75,000, and that the district court therefore had subject-matter jurisdiction under 28 U.S.C. § 1332. ROA.4760 ¶ 20. The complaint also alleged subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 due to HTC's claims under the Sherman Act, 15 U.S.C. §§ 1, 2, but those claims were later sent to arbitration. ROA.4760 ¶ 21; ROA.2779-2803. The district court entered final judgment on May 22, 2019, ROA.3143-3165, and HTC filed a timely notice of

appeal on June 20, 2019, ROA.3176-3178 (No. 19-40566). The district court awarded taxable costs on June 24, 2019, ROA.3401, and a timely notice of appeal followed on July 18, 2019, ROA.3404-3406 (No. 19-40643). This Court consolidated the merits and costs appeals and has jurisdiction over both under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    The jury was asked to decide whether Ericsson breached its duty to license its standard-essential patents on fair, reasonable, and non-discriminatory terms. Both parties proposed jury instructions on how to determine whether royalties are reasonable and non-discriminatory, but the district court gave no instructions on patent valuation or the contours of non-discrimination. Did the district court err by refusing to instruct the jury on those central issues?

2.    After trial, the district court addressed a counterclaim by Ericsson and issued a declaratory judgment that Ericsson complied with its FRAND obligations. That counterclaim involved factual issues that overlapped with HTC's claims and were reserved for the jury. If this Court remands for a new trial on HTC's claims, should it also remand the related declaratory judgment counterclaim?

3.    In its declaratory judgment ruling, the district court held that Ericsson's proposed license terms were reasonable and non-discriminatory as a matter of law,

without considering HTC's evidence of discrimination and without considering apportionment. Did that constitute independent legal error?

4.    At trial, HTC sought to discredit the non-discrimination analysis of Ericsson's expert with testimony by a different Ericsson expert in another dispute regarding the same prior licenses. The district court excluded that prior expert testimony as hearsay. Did the district court err in applying the hearsay rule to Ericsson's prior admissions?

5.    The district court premised its prevailing-party determination and costs award on rulings challenged here. If the Court vacates the judgment, should it also overturn the costs award?

STATEMENT OF THE CASE

## I.    Ericsson owns standard-essential patents and agreed to license those patents on fair, reasonable, and non-discriminatory (FRAND) terms

### A.    Product-compatibility standards result from industry collaboration

Consumer electronic devices must interoperate with products and services from hundreds of companies. For example, when consumers use a smartphone to call, text, or browse the internet, they expect that it will seamlessly send and receive transmissions no matter who designed or assembled the nearby cellular tower or made the phone or computer on the other end of the communication.

To achieve this interoperability, businesses collaborate through standard-setting organizations (SSOs) to draft technical specifications that define how products interact. Those specifications then serve as a blueprint, commonly called a "standard," that anyone building a compatible product must follow. ROA.10335-10338 at 8:10-11:25; *see also* ABA Section of Antitrust Law, *Handbook on the Antitrust Aspects of Standard Setting*, 5-10 (2d ed. 2011).

SSOs are industry coalitions of companies that work together to agree on the technical specifications and communication protocols that define a standard. ROA.10339 at 12:1-14. The cellular telecommunications standards at issue in this case were prepared through a worldwide SSO called the Third Generation Partnership Project (3GPP). The 3GGP has developed and maintained numerous cellular standards, including the "2G," "3G," and "4G" standards relevant here. *E.g.*, ROA.10340-10341 at 13:7-20, 14:14-21. The 3GPP has delegated the designation and maintenance of certain standards to regional partner SSOs, including the European Telecommunications Standards Institute (ETSI), which is primarily responsible for administering the 2G, 3G, and 4G standards. *Id.* Ericsson is a member of ETSI. ROA.5057.

## B. Because standards result from collaboration among competitors, special rules apply to licensing of standard-essential patents

The interoperability fostered by standards can benefit consumers. Due to industry-wide agreement on cellular standards, a consumer using an Apple iPhone

with an Intel chip on the Verizon network can reliably communicate with another consumer using an HTC phone with a Qualcomm chip on the AT&T network. Along with its benefits in promoting interoperability, however, standardization provides opportunities for anticompetitive behavior. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-01 (1988) (noting the significant potential for anti-competitive behavior in standard-setting because "[a]greement on a product standard is, after all, implicitly an agreement not to manufacture, distribute, or purchase certain types of products"); s*ee also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 875-76 (9th Cir. 2012) ("*Microsoft I*"); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); ROA.10441-10443 at 9:11-11:9; ROA.22392-22404.

When drafting a standard, SSO members submit proposals for specifying each function, and the membership chooses among those proposals. Members advocate for the approaches they prefer based on business considerations as well as technical merits. SSO members stand to benefit significantly if their recommendations are adopted. Many own existing patents or patent applications and can promote adoption of standards covered by their patent rights. Participating companies can also pursue new patents that cover various aspects of a developing standard. ROA.22262, 22264.

Patents whose claims cover functions specified by a standard are referred to as standard-essential patents (SEPs). Because standard-compliant products must

adhere to each specification, such products (*e.g.*, phones or computers) are assumed to practice—and thus assumed to infringe—the associated SEPs.

Companies that offer standard-compliant products thus faces a stark choice: obtain a license from each SEP owner or risk expensive patent infringement litigation that could derail their operations. *E.g.*, ROA.10201-10202 at 38:13-39:8. Left unconstrained, each individual SEP owner would wield disproportionate control over implementation of the standard. An SEP owner could refuse to license its patents entirely—and thus cut off others from using the standard—or impose unreasonable royalty demands on competing implementers as a condition for using the standard and accessing the market. *See D-Link*, 773 F.3d at 1209; *Microsoft I*, 696 F.3d at 876; *Broadcom*, 501 F.3d at 314; *see also* ROA.22265-22272, ROA.22397-22404.

To ameliorate such anticompetitive risks, SSOs typically request that members collaborating on a standard identify any potentially relevant patents before adoption of the standard and commit to licensing those patents on fair, reasonable, and non-discriminatory (FRAND) terms.[1] Other companies seeking to implement the standard become third-party beneficiaries entitled to enforce the resulting contracts between the SSO and SEP owners. *See Microsoft I*, 696 F.3d at 884-85;

---

[1] Some SSOs omit "fair" as duplicative and refer interchangeably to "RAND" standards. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 n.2 (9th Cir. 2015) ("*Microsoft III*").

ROA.23360 [FF4]. FRAND licensing obligations ensure that anyone who wants to implement the standard by offering standard-compliant products can acquire the rights to do so on reasonable and uniform terms. But although SSOs seek FRAND licensing commitments from SEP owners, they do not and in practical terms cannot assess whether the declared patents are valid or in fact essential to the standard. *D-Link*, 773 F.3d at 1209.

ETSI requests that its SEP-owning members sign a written declaration promising to grant FRAND licenses to any implementer. ROA.215-223; ROA.5063-5064 ¶¶ 35, 37; ROA.9249 [FF4]. If an ETSI member refuses to make that promise, ETSI seeks alternative specifications. ROA.5063 ¶ 35; ROA.217-218.

Ericsson submitted numerous declarations to ETSI identifying its patents as essential to the 2G, 3G, and 4G standards and promising to license those patents on FRAND terms. ROA.9249 [FF5]; ROA.9253 [CL5]; ROA.5065-5066 ¶¶ 45-46, ROA.5057-5058 ¶ 5; ROA.227-236; ROA.5074 ¶¶ 45, 46, 110. Ericsson concedes that its FRAND licensing commitments are binding and enforceable by third parties. *See* ROA.9253 [CL5].

### C. Licensors and licensees have vigorously disputed the proper methods for calculating FRAND royalties

Patent royalties are often calculated using two primary factors: the royalty base and royalty rate. The royalty base, in units or dollars, provides the starting point, and the royalty rate indicates the percentage or per-unit payment. *See D-Link*, 773

F.3d at 1226-27; *VirnetX, Inc. v. Cisco Sys., Inc.*, <u>767 F.3d 1308, 1326</u> (Fed. Cir. 2014).

SEP holders like Ericsson ███ assert that a key factor, if not the actual royalty base, should be the sales price of the final consumer product, such as a smartphone. *See, e.g.*, <u>ROA.8955</u>; ████████████████████████ But a focus on the end-product sales price is problematic for multicomponent products like smartphones because only a subset of their features relates to any single standard or SEP portfolio. For example, consumers may choose a smartphone based on its camera, screen, battery life, sound quality, operating system, or overall look and feel. <u>ROA.10098-10102</u> at 61:5-65:5. Those features are not covered by the 2G, 3G, or 4G standards or the SEPs for those standards. <u>ROA.10146-10153</u> at 109:15-116:13. Using the price of the entire smartphone, rather than focusing on the value of the relevant subcomponent(s), tends to increase the ultimate royalty amount and in litigation carries considerable risk of "skew[ing] the damages horizon for the jury" and overcompensating the patentee. *D-Link*, <u>773 F.3d at 1226-27</u> (citation omitted).

Historically, Ericsson and other cellular SEP holders insisted on licenses structured to use entire end products as the royalty base. <u>ROA.8955</u>; <u>ROA.10365-10367</u> at 38:14-40:1; <u>ROA.11612</u> at 13:13-21; <u>ROA.17120-17121</u>. Over time, those SEP owners' demands to base royalties on the full price of a smartphone created a feedback loop such that any analysis invoking past "comparable licenses" reinforced

that approach. *See* ROA.22303-22306 ¶¶ 75-83. That practice also became increasingly distorted over time as the price of smartphones increased with the addition of more and more functionality (unrelated to connectivity) such as fingerprint sensors, premium audio, and extended battery life.

Over the last decade, licensees began to challenge the SEP licensing framework imposed by Ericsson and other SEP holders as unreasonable and inconsistent with FRAND principles. Licensees have argued that royalties predicated on the full value of multifunctional products systematically overcompensate licensors whose patents primarily relate to a single function, such as cellular connectivity.

For example, in *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) ("*Microsoft II*"), *aff'd* 795 F.3d 1024 (9th Cir. 2015) ("*Microsoft III*"), Microsoft alleged that Motorola had breached its FRAND licensing agreements. *Id.* at *2. Motorola's license proposals used an entire-product approach and specified a royalty of 2.25% of the price of Microsoft's end products. *Id.* The district court rejected that approach and applied an analysis based on a hypothetical negotiation tailored to account for Motorola's FRAND licensing obligation. *Id.* at *13-20. The court did not focus on actual negotiations between the parties, but rather on how those negotiations would have proceeded if Motorola had honored its FRAND obligations. *Id.* The court found that FRAND compliance required far lower royalties than Motorola had offered. *See id.* at *101 (fractions of a cent to a

few cents per unit). Another district court cited that decision approvingly and adopted its methodology when setting FRAND royalties. *In re Innovatio IP Ventures, LLC Patent Litig.*, No. 11-cv-9308, 2013 WL 5593609, at *3, *12-18 (N.D. Ill. Oct. 3, 2013) (setting a FRAND royalty of less than ten cents per subcomponent, far lower than the SEP holder's requested royalties of $3 to $36 per end product).

Ericsson has previously litigated FRAND-licensing disputes surrounding the same SEPs and ETSI contracts at issue here. For example, one prospective licensee, smartphone maker TCL, brought suit against Ericsson in 2014, challenging proposed SEP royalties of 0.8 to 2% per smartphone. *See TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, Nos. SACV14-341, CV15-2370, 2018 WL 4488286, at *3-4 (C.D. Cal. Sept. 14, 2018). TCL asserted that Ericsson's royalty offers were unreasonable and discriminatory, and Ericsson asserted that its offers were predicated on a long history of prior licenses between Ericsson and other SEP holders. ROA.3616-3618. Instead of focusing on the actual value of its SEPs as incorporated into the cellular standard, Ericsson argued that its history of prior licenses should gauge reasonableness under FRAND. ROA.3618. The court, however, rejected Ericsson's position and issued a judgment setting forth a substantially lower FRAND royalty. *TCL*, 2018 WL 4488286 at *56-57. The court also found that Ericsson's license terms varied substantially among its licensees and violated the non-discrimination requirement. *Id.* at *56.

Around the time of the TCL litigation, another smartphone maker raised a separate challenge to Ericsson's SEP licensing practices. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

## II.    The present dispute between HTC and Ericsson

HTC entered into several license agreements with Ericsson over the years. ROA.35062 [FF7]. The most recent was in effect through December 31, 2016, and provided for a six-month period after expiration when HTC could pursue a new license without threat of infringement litigation. ROA.9974-9975 at 65:19-66:11.

In December 2016, Ericsson offered to license its 2G, 3G, and 4G SEPs to HTC for $2.50 per smartphone. ROA.9250 [FF8]. HTC surveyed the competitive landscape and evaluated recent court decisions dealing with patent valuation and FRAND licensing. ROA.11234-11247 at 46:2-59:15; ROA.32596-32611. Ericsson's previous royalty demands to HTC had been based on the sale price of HTC's

phones as a whole, and HTC concluded that, among other things, those royalties failed to assess the value of Ericsson's SEPs separately from the value of other technology in HTC's phones and the value associated with the cellular standards in general. ROA.9966-9967; ROA.11242-11246 at 54:4-58:12; ROA.32614-32618. HTC also considered other contemporaneous challenges to the status quo and its own ongoing negotiations with other SEP owners that had acknowledged a need to reduce royalties from previous levels. ROA.10071-10072 at 34:21-35:22; ROA.9602; ROA.31126. HTC concluded that Ericsson's royalty demands were not FRAND.

HTC thus undertook its own analysis to determine the appropriate FRAND royalty for Ericsson's cellular SEPs. ROA.32596-32625. HTC believed it should not be constrained by license terms that Ericsson or other SEP holders had previously extracted from implementers, so it instead conducted an analysis based on the actual value of Ericsson's SEPs and the communication component to which they allegedly add value.

HTC concluded that the traditional licensing framework used by Ericsson and other cellular SEP holders violated FRAND, and that the appropriate royalty base should not be the price of the entire multifunctional smartphone, but of the baseband processor that implements cellular connectivity. HTC accounted for the actual value that Ericsson's SEPs contributed and concluded that a fair and reasonable royalty was about $0.10 per smartphone. That rate was much lower than Ericsson's royalty

demand and conceptually distinct from the royalty calculations traditionally de-manded by Ericsson and other large SEP holders, but it was based on a sound legal analysis that HTC shared with Ericsson in a detailed, 30-page presentation. ROA.32596-32625. HTC described how changes in the legal, economic, and tech-nological landscape mandated a recalibration of Ericsson's proposed licensing terms, ROA.32598, and HTC's proposal provided a detailed explanation of why the baseband processor, not the entire phone, was the appropriate starting point. ROA.32612-32622.

Ericsson never identified any substantive deficiencies in HTC's analysis. Nor did it provide any similar analysis to support its royalty calculations based on the full price of HTC's smartphones. ROA.9984-9985 at 75:2-76:13. Rather, Ericsson justified its approach solely on grounds that Ericsson and other large SEP holders had always structured their licenses that way and by pointing to past, purportedly comparable licenses. *See id.*

## III. HTC's declaratory judgment action to enforce Ericsson's contractual obligation to license its SEPs on FRAND terms

HTC concluded that (1) Ericsson's per-smartphone demand was not FRAND, and (2) the parties could not resolve their fundamental disagreement by the end of the six-month hold period. ROA.9985-9986 at 76:14-77:1. HTC therefore filed this

lawsuit in April 2017. [2] ROA.72-104. In early June 2018, during the litigation, Ericsson made a second offer to HTC, proposing a royalty of 1% of the selling price of each HTC smartphone, with a $1 floor and a $4 cap. ROA.9990-9992 at 81:10-83:1.

HTC filed its second amended complaint shortly thereafter. ROA.15980-16019. That complaint first alleged that Ericsson breached its contractual obligations to ETSI by demanding unreasonable and discriminatory royalty terms, both in the parties' recent discussions and in their past license agreements. ROA.15995-16002, ROA.16012. Second, HTC alleged that Ericsson had breached its duty to perform its FRAND contractual obligations in good faith. ROA.16013-16014. Third, HTC alleged that Ericsson had participated in concerted action with other major SEP holders in violation of the Sherman Act by agreeing to use only the price of the entire handset as the royalty base and to use an agreed-upon range of royalty rates. ROA.16002-16009, ROA.16014-16015. Fourth, HTC alleged that Ericsson had used its market power to obtain supra-FRAND royalties for its SEPs. ROA.16009-16011, ROA.16015-16016.

---

[2] HTC initially filed suit in the United States District Court for the Western District of Washington. The case was later transferred to the Eastern District of Texas. ROA.1533-1538.

**A. The district court severed and stayed all of HTC's claims except those concerning forward-looking license terms**

In August 2018, Ericsson moved to compel arbitration of the portion of HTC's breach-of-contract claim that sought damages for past overpayments in excess of a FRAND royalty. Although HTC's request to recover for past overpayments arose under Ericsson's contractual obligations to ETSI, Ericsson argued that the relief touched on its prior licenses with HTC because calculating damages would require considering how much HTC paid under those licenses. Ericsson moved to compel arbitration of HTC's antitrust claims for similar reasons. The district court granted Ericsson's motions in early November 2018, leaving for trial only contract-based, "going forward" claims relating to licensing demands for the period after December 31, 2016. ROA.2779-2803.

**B. Ericsson focused on the value of cellular connectivity in general rather than the independent value of its SEPs**

As the remaining case progressed, Ericsson defended its December 2016 and June 2018 royalty offers using evidence highlighting the full price of HTC's smartphones and the value of standard-based cellular connectivity. For example, ███ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ In addition, Ericsson's economics expert opined that the difference in prices between 4G enabled devices and non-4G enabled devices was sometimes over $100 per

device and that this represented the value of 4G cellular connectivity as a basis for what Ericsson should receive. ROA.21005-21026. HTC moved to exclude such evidence as untethered from the value of Ericsson's SEPs, but the district court denied HTC's motion. ROA.2956 ¶ 16; ROA.9547-9555 at 164:18-172:25.

### C. The district court refused to allow HTC to explain the rationale for its counteroffer to Ericsson or to reference the authorities supporting its proposal

As discussed above, HTC's counteroffer to Ericsson was significantly lower than many past cellular SEP licenses because it used a royalty base more closely tied to cellular communications. HTC presented Ericsson with a detailed written explanation of its royalty calculations, but the district court excluded that document from trial to the extent it referred to other litigation challenging Ericsson's FRAND licensing practices. ROA.9721-9726 at 138:7-143:13. The district court likewise granted Ericsson's motion to preclude HTC from referring to any of those other challenges at trial. ROA.3001-3002; ROA.30016-30020. That allowed Ericsson to paint HTC as a renegade and to suggest that no other implementers had taken similar positions. ROA.9937 at 28:16-18; ROA.11210-11218.

### D. The district court refused to give the jury substantive instructions for determining FRAND royalties

By filing suit, HTC's sought to establish that Ericsson's offers violated FRAND, as other SEP implementers had done in *Microsoft* and *Innovatio* and as TCL ███████ had done against Ericsson itself. Resolving that question required

the jury to determine whether the evidence showed that Ericsson's SEP-licensing offers to HTC had been unreasonable or discriminatory. It was therefore critical for the court to instruct the jury on what constitutes a reasonable royalty and what constitutes impermissible discrimination under FRAND. HTC submitted proposed instructions to assist the jury in its task, and Ericsson likewise proposed substantive instructions on the meaning of FRAND. *E.g.*, ROA.32317-32318. ROA.32321-32326.

The district court, however, rejected the parties' proposals and instructed the jury only as follows:

> Whether or not a license is FRAND will depend upon the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.
>
> Ladies and gentlemen, there is no fixed or required methodology for setting or calculating the terms of a FRAND license rate.

ROA.11017 at 19:11-17.

## E.    A confused jury issued a mixed verdict

The district court posed three questions to the jury. ROA.3029-3033. Question 1 asked whether HTC had proven that Ericsson failed to comply with its FRAND obligation. Having received scant instruction on that point, the jury sought clarification during its deliberations, but the district court declined to elaborate. ROA.11052-11054 at 54:10-56:7. The jury then returned a verdict that HTC had not proven by a

preponderance of the evidence that Ericsson breached its obligation to offer HTC FRAND license terms. ROA.3030.

Questions 2 and 3 asked whether each party had proven that the other had breached its duty of good faith and fair dealing in working toward a license for Ericsson's SEPs. The jury found that both sides had breached such a duty. ROA.3031-3032. Questions 2 and 3 are not at issue in this appeal.[3]

### F. The district court's post-trial orders addressed additional claims, declared that Ericsson had offered FRAND-compliant terms, and denied further relief

After the verdict, the district court directed the parties to file motions for entry of final judgment and injunctive relief. ROA.3046-3047.

HTC moved to dismiss the case on grounds that (1) neither party had sought damages on any pending claim, (2) injunctive relief was unavailable, and (3) any declaratory relief on the parties' claims would be advisory. ROA.8664-8666. Alternatively, HTC requested final judgment on its claim that Ericsson had breached its duty of good faith and asked the court to dismiss Ericsson's counterclaim for a declaration of FRAND compliance because Ericsson had not pursued that claim before

---

[3] The district court entered judgment for HTC on the claim against Ericsson but awarded no relief. ROA.3149-3150, ROA.3164. On Ericsson's reciprocal claim against HTC, Ericsson withdrew its request for relief during post-trial briefing, ROA.3080, and the court entered judgment against Ericsson on that claim, ROA.3161-3162. Ericsson has not cross-appealed from either judgment.

the jury. ROA.8667-8674. Finally, HTC asserted equitable defenses to Ericsson's claim that HTC had breached a duty of good faith. ROA.8698-8711. Among other things, HTC argued that the doctrine of unclean hands precluded relief on Ericsson's claim due to Ericsson's own bad-faith conduct. ROA.8709-8710.

Ericsson sought injunctive relief—including a mandated license and back-royalty payment—and entry of a declaratory judgment in its favor. ROA.32441-32458; ROA.32471-32488. According to Ericsson, the jury's conclusion that HTC did not prove a breach of FRAND necessarily meant that Ericsson's 2016 and 2018 offers both affirmatively complied with FRAND. ROA.32472; *see also* ROA.32474-32475. In addition, Ericsson sought a final judgment providing no relief on HTC's breach-of-good-faith claim and awarding costs to Ericsson as the prevailing party. ROA.32485-32486.

The district court issued findings of fact and conclusions of law, ROA.35059-35073, and a final judgment, ROA.3143-3165. The court first held that Ericsson had not abandoned its counterclaim for a declaration of FRAND compliance because "a declaratory judgment is a question for the Court, not the jury." ROA.3153 (citing 28 U.S.C. § 2201). It then ruled that both of Ericsson's royalty offers affirmatively satisfied FRAND. ROA.3153-3155; ROA.35063-35072. But it denied Ericsson's request for an injunction requiring HTC to pay future and back royalties based on those offers because (1) damages were available as a remedy and Ericsson had withdrawn

any such request before trial; and (2) Ericsson had breached its own duty of good faith, and a party "who comes into equity must come with clean hands." ROA.3158-3159. Finally, the district court deemed Ericsson the prevailing party entitled to taxable costs. ROA.3163; *see also* ROA.3401.

## SUMMARY OF ARGUMENT

1. Question 1 asked the jury to determine whether Ericsson breached its FRAND licensing obligations. The district court committed prejudicial error by failing to instruct the jury on the applicable law and instead suggesting that no rules applied.

Determining whether royalties qualify as *fair and reasonable* requires determining the value attributable to a licensed invention separate from the value of a product's other features. In SEP cases, that requires apportioning the value of the SEP from the value of other features in a multicomponent product, from the value of other parts of the standard, and from the value of interoperability created by standardization. As numerous courts have held, juries must be instructed on those principles.

The district court, however, refused both parties' proposals and issued cursory instructions that ignored patent valuation entirely. That was prejudicial because the smartphones at issue contain a multitude of valuable features that do not depend on the cellular standards at issue, and the cellular standards provide additional value

and encompass numerous other inventions apart from Ericsson's SEPs. And determining whether either of Ericsson's offers was reasonable required the jury to assess the value of Ericsson's SEPs specifically. Because the district court provided no guidance on apportionment and patent valuation, the jury was not equipped to evaluate the evidence or determine whether Ericsson's proposed royalties were reasonable.

The district court similarly erred by failing to instruct on non-discrimination. Non-discrimination requires, at a minimum, offering like terms to competing implementers, and there was no dispute that several direct competitors of HTC had received lower rates. Non-discrimination is integral to the FRAND bargain and safeguards its pro-competitive purpose, yet the district court provided no guidance to the jury on what non-discrimination means or how to apply it. The court rejected HTC's legally sound instruction and offered nothing in its place on that critical issue. That prejudiced HTC because telling the jury it could make up its own rules allowed it to disregard undisputed evidence of discrimination.

The Court should therefore vacate the district court's judgment based on the verdict and remand for trial before a correctly instructed jury.

2. After trial, the district court issued a declaratory judgment that Ericsson's licensing offers to HTC affirmatively complied with FRAND. That judgment rested on the jury's determination that HTC failed to establish breach, and the district court

recognized the substantial factual overlap between what it and the jury addressed. If this Court overturns the jury's verdict, it should also remand the related declaratory judgment claim for reconsideration in light of new jury findings.

3. Regardless of the jury instructions, this Court should vacate the district court's declaratory judgment because its ruling that Ericsson complied with FRAND as a matter of law disregarded apportionment entirely and ignored undisputed, ██ ████████████████████████████████████████ to HTC and its competitors.

4. In a previous case challenging its SEP licensing, Ericsson retained an expert to calculate the effective royalties in Ericsson's previous SEP licenses. Those royalties ██████████████ from the calculations submitted by Ericsson's expert in this case regarding the very same licenses. Ericsson moved to exclude that evidence but conceded that it could be used for impeachment. The district court, however, categorically excluded the prior expert's testimony as hearsay even though it was a party admission under settled law of this Circuit. That legal error warrants a remand because it materially prejudiced HTC, foreclosing legitimate impeachment of Ericsson's key witness on a pivotal issue in the non-discrimination analysis.

5. The district court awarded costs to Ericsson as the prevailing party. If this Court vacates the district court's merits judgment, it should also vacate the prevailing party determination and costs award.

## I. The district court erred by refusing to instruct the jury on the key issues at trial: patent valuation and non-discrimination

"It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the law applicable to the case," thereby guiding them "in their search for a proper resolution of the dispute." Charles A. Wright & Arthur R. Miller, 9C *Federal Practice and Procedure* § 2556 (3d ed. 2019); *Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993) (quoting earlier, similar version of Wright & Miller). The district court failed to fulfill that duty as to the critical issues in this case and instead told the jury—erroneously—that *no* standards governed their decision.

Jury instructions are generally reviewed for abuse of discretion. *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010) (noting that the Court will "ignore technical imperfections"). But "[b]y definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)).

This Court's review of jury instructions includes determining "whether they accurately *and completely* state the law." *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1192 (5th Cir. 1995) (emphasis added). Omitting a requested instruction constitutes reversible error when the instruction "was a substantially correct statement of law, … not substantially covered in the charge as a whole, …

concern[ing] an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004) (quotation and alterations omitted).

Question 1 on the verdict form asked whether HTC established that Ericsson's royalty demands breached Ericsson's contractual duty to license its SEPs on reasonable and non-discriminatory terms. ROA.3030. Established rules govern evaluation of patent royalties—in patent cases generally, and in SEP cases specifically. The district court refused to instruct on those rules despite the parties' requests, and it rejected legally sound instructions on critical issues while presenting nothing of substance in their place. Even worse, it affirmatively told the jury that there were no rules. In so doing, the court committed reversible error.

### A. Apportioning patent value is critical to evaluating whether royalties are "reasonable" under FRAND, and the district court erred by disregarding that requirement and instructing the jury that no rules applied

Ericsson's FRAND obligations required it to offer all implementers "fair and reasonable" licensing terms for its SEPs. Ericsson made two offers to HTC, one during pre-suit discussions ($2.50 per device) and another during the litigation (1% of HTC's smartphone price with a $1 floor and a $4 cap). Resolving whether Ericsson breached its FRAND obligations required the jury to analyze whether Ericsson's proposed royalties could qualify as *reasonable* for Ericsson's relevant SEPs. Under

established law, that required isolating, or "apportioning," the value of those patents from the value of standardization, other aspects of the relevant standards, and other features of HTC's products.

The factfinder assessing patent value in a royalty determination must (1) separate the value attributable to the patented invention from the value of other features and inventions in a broader product incorporating the patented invention, and (2) use that value as the measure for a reasonable royalty. *E.g.*, *VirnetX*, 767 F.3d at 1326-27. The district court's minimal instructions disregarded that basic rule of apportionment and left the jury adrift in its deliberations on Ericsson's proposed royalties without guiding standards for discerning the value of Ericsson's SEPs.

Accordingly, the Court should vacate the judgment and remand for a new trial on the issue presented by Question 1.

### 1. A reasonable royalty must reflect value attributable to the patented invention—and no more

To be reasonable, a royalty must reflect the value of the patented invention, as opposed to the value of a product's other features. "The *essential* requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *D-Link*, 773 F.3d at 1226 (emphasis added). The Supreme Court has recognized that principle for over a century. *Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("[T]he patentee must show in what particulars his improvement has added to the usefulness of the machine or

contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated."). Ever since, courts have emphasized the essential role of apportionment in reasonable-royalty analyses. *E.g.*, *VirnetX*, 767 F.3d at 1326 (citing *Garretson* and holding that patentees "must take care to seek only those damages attributable to the infringing features").

Put another way, apportionment serves to prevent royalties that are *un*reasonable because they "overreach and encompass components not covered by the patent." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 70 (Fed. Cir. 2012). Thus, for all patents—including SEPs—the royalty for a multicomponent product "*must* be apportioned to the value of the patented invention." *D-Link*, 773 F.3d at 1232 (emphasis added).

Apportionment is especially critical in SEP cases because the adoption of any standard—and the resulting network of interoperable products—produces substantial collective value apart from the SEPs themselves. The Federal Circuit, which hears all appeals in patent infringement cases, has therefore recognized that "special apportionment issues" arise when considering SEPs. *Id.*

First, the value of an SEP covering part of a standard must be apportioned not just from the value of all other components of a standard-compatible product, but also from the value of all other features in the standard. *Id.* Second, the fact of

standardization itself adds great value in terms of interoperability, which in turn drives broad adoption and consumer demand. That network value is not premised on any particular element of the standard. Mark A. Lemley, *Intellectual Property Rights and Standard-Setting Organizations*, 90 Cal. L. Rev. 1889, 1897 (2002) ("Simply agreeing on a standard for two products to interact has value in a network market …. Indeed, in some cases it may be more important that an industry coalesces around a single standard than which particular standard is chosen."). That value must be separated from the value attributable to each SEP on its own. *D-Link*, 773 F.3d at 1232; *see also Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304-05 (Fed. Cir. 2015). In other words, the value of an SEP must be apportioned not only from the value of other non-patented features in a standard-compliant product, but also from the value of the standard as a whole and from the value of interoperability, *i.e.*, the value of standardization itself. *D-Link*, 773 F.3d at 1232-33.

The crucial role of apportionment is reflected in the legal requirements for instructing juries on reasonable-royalty calculations, both for patents in typical infringement cases and for FRAND-encumbered SEPs in particular. Under general valuation principles, jury instructions addressing royalties for a multi-component product must explain the need to apportion royalties to cover only patented features rather than the product's overall value. *D-Link*, 773 F.3d at 1228; *VirnetX*, 767 F.3d

at 1326-27. The leading model patent jury instructions on reasonable royalties accordingly include that basic principle.[4]  In addition, juries in SEP cases "*must* be instructed" to apportion royalties for an SEP to the value of the patented invention rather than the value of the standard. *D-Link*, 773 F.3d at 1233 (emphasis added). The jury in such cases also "*must* be told to consider the difference between the added value of the technological invention and the added value of that invention's standardization." *Id.* (emphasis added).

### 2.    The district court rejected HTC's proper apportionment instructions and ignored the issue of valuation entirely

Contrary to precedent and the proposed instructions from both parties, the district court did not instruct the jury on apportionment—at all. Citing *D-Link*, among other authorities, HTC proposed the following instructions on patent valuation:

**K. Reasonable Royalty - Apportionment Generally**

> When the product(s) that are the subject to a claim of royalties by an SEP holder have both patented and unpatented features, a "reasonable royalty" requires that the value of the patented features is apportioned from the non-patented features using reliable and tangible evidence.

---

[4] Federal Circuit Bar Association, Model Patent Jury Instructions § 6.7 (July 2016); American Intellectual Property Law Association, Model Patent Jury Instructions §§ 10.2.5.1, 10.2.5.4 (2018); United States District Court for the Northern District of California, Model Patent Jury Instructions §§ 5.7, 5.10 (Dec. 2018).

**L. Reasonable Royalty - Apportionment of Royalties in FRAND context**

When dealing with SEPs subject to FRAND obligations, apportionment requires that the patentee's royalty be premised on the value of the SEP holder's patented invention(s), not any value added by the standard's adoption of the patented invention(s). That is, a FRAND royalty must reflect only the value of the patented invention(s) and not the additional value that resulted from the patent(s)' inclusion in the standard or the value resulting from the standard's success in the marketplace.

Additionally, in this context, to ensure that a FRAND royalty is based on the incremental value that the [SEP holder's] patented invention(s) add to the product(s), the SEP holder's patented invention(s) must be apportioned from all of the other technology reflected in the standard that is not patented by the SEP holder.

The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

ROA.32317-32318.

Ericsson likewise recognized the legal imperative to instruct on patent valuation and apportionment and their application in FRAND cases. *See* ROA.32323-32326 (proposed instruction entitled "Compliance with FRAND"). Citing *D-Link*, Ericsson proposed instructing the jury that "You should evaluate the proposed royalty based on the value of the patent holder's patented invention(s), not any additional value solely attributable to the standard's adoption of the patented invention(s)." ROA.32325-32326.

Over objection, the district court rejected HTC's proposed instructions and did not give Ericsson's instruction, either. *See* ROA.10864-10865 at 216:5-217:1 (overruling HTC's objections). Instead, the court issued its own two-sentence instruction on FRAND, which provided no guidance as to patent valuation:

> Whether or not a license is FRAND will depend upon the totality of the particular facts and circumstances existing during the negotiations and leading up to the license.

> Ladies and gentlemen, there is no fixed or required methodology for setting or calculating the terms of a FRAND license rate.

ROA.11017 at 19:11-17. Those two sentences constituted the entirety of the district court's instructions on FRAND issues, including reasonable royalties, and essentially told the jury it was free to do whatever it wanted because no rules applied.

### 3. The district court's failure to instruct the jury on valuation is reversible error

The district court's wholesale omission of any instructions relating to patent valuation contradicted established law and satisfies all three conditions for establishing reversible error. *See Kanida*, 363 F.3d at 578. The district court's determination that Ericsson did not breach its duty to offer a FRAND license should therefore be vacated for a new trial before an adequately instructed jury.

*First*, HTC's proposed instructions were substantively correct statements of law. HTC's proposed general instruction on apportionment stated that "a 'reasonable royalty' requires that the value of the patented features is apportioned from the non-

patented features using reliable and tangible evidence." ROA.32317. HTC's proposal closely tracked the language and holding in *Garretson*, where the Supreme Court likewise emphasized the need to apportion between patented and unpatented features based on "reliable and tangible" evidence. 111 U.S. at 121; *see also D-Link*, 773 F.3d at 1232-33 (discussing *Garretson*); *VirnetX*, 767 F.3d at 1326-27 (same).

HTC's instruction on apportionment in the FRAND context also provided straightforward statements of SEP-specific apportionment principles that have been recognized by numerous courts—in particular, the need to separate the value of an SEP from the value of the broader standard and the value of standardization. ROA.32317-32318; *see D-Link*, 773 F.3d at 1232; *Commonwealth Sci.*, 809 F.3d at 1304-05; *Broadcom*, 501 F.3d at 314 (explaining that a patent's value "becomes significantly enhanced" upon becoming an SEP); *TCL*, 2018 WL 4488286, at *54; *Innovatio*, 2013 WL 5593609, at *6, *9.

To be sure, much of the precedent on apportionment has arisen in the context of patent-infringement damages. But the task is the same when evaluating SEP royalties: the jury must determine how much a patentee should be paid for use of its patented inventions, and only those inventions. *See Microsoft III*, 795 F.3d at 1040 (holding that "the Federal Circuit's patent law methodology can serve as guidance in contract cases on questions of patent valuation"); *Realtek Semiconductor, Corp. v. LSI Corp.*, No. 12-cv-3451, 2014 WL 2738226, at *6 (N.D. Cal. June 16, 2014)

("[D]etermining damages for patent infringement is equivalent to declaring the parties' rights under the RAND contract."). Indeed, Ericsson acknowledged that equivalence. After trial, Ericsson effectively sought back royalties (damages) based on the jury's verdict. ROA.32455-32456 & n.2. Ericsson also told the district court that "this whole analysis is a patent damages analysis." ROA.9475 at 92:17-25. The main difference is that in patent-infringement cases the patent owner bears the burden of establishing a reasonable royalty. In this case, the district court placed the burden of proof on HTC, ROA.2811-2814, and HTC objected but applied that directive in its proposed instructions. Putting burden aside, HTC's proposed instructions therefore were correct statements of the law on the need to apportion reasonable royalties in this case.

Notably, Ericsson did not object to either of HTC's proposed instructions as legally erroneous. *See* ROA.32317 nn.46, 48 (objecting on other grounds); *see also* ROA.9476 at 93:1-4 (Ericsson seeking to exclude HTC's expert testimony while conceding: "I don't think that anyone is arguing that Ericsson doesn't need to isolate the technical benefit of its patents.").

*Second*, HTC's instructions were not substantially covered elsewhere in the jury charge. In fact, the district court did not address patent valuation or apportionment at all. ROA.11017 at 19:11-17; *see generally* ROA.11006-11018 at 8:11-20:19, ROA.11035-11039 at 37:24-41:7. The district court's instructions never mentioned

those issues and instead erroneously told the jury that there were no rules to guide its analysis of Ericsson's proposed royalty terms.

*Third*, HTC's proposed instructions concerned an important issue in the trial. Indeed, Ericsson's failure to apportion and the unreasonable value it attributed to its SEPs were central to the parties' dispute. The district court's refusal to instruct the jury on valuation and apportionment crippled HTC's ability to present its case and improperly ratified Ericsson's evidence highlighting the value of the whole smartphone and the value of the standard—not the value of its SEPs alone.

Courts have recognized that juries are easily confounded without careful guidance on patent valuation. Presenting royalty calculations premised on the full, unapportioned value of a product containing numerous unpatented features "cannot help but skew the damages horizon for the jury." *VirnetX*, 767 F.3d at 1327 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). Likewise, while it can be difficult to separate the value of an SEP from the value of the whole product, the whole standard, and standardization itself, proper apportionment is an essential task, and instructing the jury on those issues is crucial to ensure that those analyses take place. *See D-Link*, 773 F.3d at 1232-33 & n.9 (emphasizing that "these tasks are not always easy" and holding that juries *must be* instructed accordingly); *cf. Johnson v. Sawyer*, 120 F.3d 1307, 1329 (5th Cir. 1997) ("Because of the

complexity and intricacy of the issues in this case, a correct jury instruction was needed more than ever.").

Numerous courts have therefore provided similar apportionment instructions to aid juries tasked with determining proper SEP royalties. *E.g.*, *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. 15-cv-00634 (D. Del. Nov. 7, 2018), ECF Nos. 481, 483 (addressing apportionment in jury instructions 38 and 46); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 17-cv-00123 (E.D. Tex. Aug. 25, 2018), ECF No. 284 at 27 (similar); *Realtek Semiconductor, Corp. v. LSI Corp.*, No. 12-cv-3451, 2014 WL 10213343 (N.D. Cal. Feb. 25, 2014) (similar, instructions 12 and 14); *see also Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-cv-04431 (D.N.J. Sept. 24, 2019), ECF No. 558 at 28-30 (granting new trial on damages because the plaintiff "failed to present a damages case which satisfies the apportionment requirement").

This case proves the need for careful apportionment and the prejudice that results from failing to instruct the jury accordingly. Ericsson acknowledged that the jury here had to decide "the fair and reasonable value of Ericsson's patents." ROA.10345-10346 at 18:23-19:11. The relevant cellular standards have been implemented in a wide variety of complex, multi-component products with built-in cellular data connectivity, such as smartphones and tablet computers. And those products contain numerous other valuable features and technologies unrelated to the 2G, 3G,

and 4G connectivity standards, such as vivid screens, sophisticated operating systems, robust cameras, long-lasting batteries, powerful data processors, and clear speakers. *See* ROA.10146-10153 at 109:14-116:13; ROA.10356-10357 at 29:19-30:23. Moreover, each of the standards contains *thousands* of other patents contributed by companies other than Ericsson, as well as additional unpatented features. ROA.10284-10285 at 121:14-122:7; ROA.5057 ¶2; ROA.10254-10255 at 91:19-92:4. And the very adoption of those standards provided value apart from any particular feature or SEP simply by establishing widely agreed-upon parameters for interoperability. ROA.10335-10338 at 8:15-11:1.

Valuation pitfalls thus abounded, and they were manifest at trial. For example, both of Ericsson's licensing offers presented to the jury were tied to the full price of HTC's smartphones (one was expressly a percentage of the smartphone price, and the other was a comparable dollar amount for each phone), ROA.10897-10898 at 25:19-26:3; ROA.10679-10680 at 31:3, 32:4-21, and those phones include numerous components and features that make them "smart" and useful independent of their cellular connectivity. Likewise, Ericsson presented valuation theories ██████████ ██████ based on the entire value of smartphones and of cellular connectivity rather than starting from smaller subcomponents and focusing on the specific patented functions. ROA.11637-11638 at 38:6-39:15; *see also* ROA.2893-2894. The district court allowed Ericsson to present price differences between cellular and WiFi-only

devices, ROA.11638-11639 at 39:17-40:8; ROA.10732-10736 at 84:16-88:21, which improperly suggested the entire value of standardized cellular connectivity as a proxy for the value of Ericsson's SEPs.

Without instructions on apportionment and valuation more generally, the jury was left without guardrails against attributing unwarranted value to Ericsson's SEPs. The jury was thus allowed to arrive at an elevated view of what qualified as a fair and reasonable royalty. That is particularly so because the district court's instructions not only failed to explain or even mention apportionment, but also affirmatively and erroneously told the jury that "there is no fixed or required methodology for setting or calculating the terms of a FRAND license rate." ROA.11017 at 19:11-17. The question here is not any particular method of apportionment but whether the jury must be told of the necessity of considering apportionment. Determining the value of Ericsson's SEPs was a prerequisite to determining whether Ericsson breached its duty to offer a license to those SEPs on reasonable terms. After being told that no rules apply to cabin what qualifies as a fair and reasonable royalty, the jury would have been hard-pressed to reject Ericsson's argument that it was entitled to whatever it could extract, much less to accept HTC's argument that Ericsson had failed to offer a reasonable royalty commensurate with the value of its SEPs.

Under such circumstances, this Court sets aside the jury verdict. In *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 434 (5th Cir. 1996),

for example, the jury considered whether Falconwood was bound by its controller's fraudulent loan application. The district court refused Falconwood's requested instructions on principles of agency in favor of a perfunctory alternative that made only general reference to agency. This Court reversed:

> The agency issue was complicated. There were questions of apparent authority, ratification, and whether Falconwood could be responsible for its own agent's conduct when the agent may not have acted in Falconwood's interests. These are complex legal theories that a layman might not understand. All the jury was told was that "in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority, delegated to him by the corporation or within the scope of his duties as an employee of the corporation."

> Under the circumstances, this was inadequate. The district court abused its discretion by not addressing agency law in more detail.

*Id.; see also Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 377-78 (5th Cir. 1989) (vacating jury's damages award where a district court allowed evidence on a "unit of time" damages theory without a cautionary instruction on adjusting for present value); *Lind v. Aetna Cas. & Sur. Co.*, 374 F.2d 377, 379-80 (5th Cir. 1967) (reversing where "the jury never had a chance" due to "bare-bones instructions" on key legal principles).

The instructions in this case provided even less guidance to the jury. The issues here were at least as complex, yet the district court's instructions ignored the

established legal standards and instead erroneously stated that "there is no fixed or required methodology for setting or calculating the terms of a FRAND license rate" and that the outcome "will depend upon the totality of the particular facts and circumstances." ROA.11017 at 19:11-17. Those instructions provided no guiding principles and instead erroneously told the jury that no broader considerations apply beyond the particular facts and circumstances of this case. Moreover, the instructions affirmatively told the jury everything was in play—"the totality of the particular facts and circumstances"—including evidence on the value of phones as a whole, the value of the standards at issue, and the value of standardization. That was contrary to law, and the judgment based on Question 1 cannot stand.

### B. The district court similarly failed to instruct the jury on the non-discrimination requirement of FRAND

This Court should vacate the judgment for a second, independent reason. The district court also failed to instruct the jury on the other half of FRAND: the non-discrimination requirement.

Non-discrimination is a critical pledge in the FRAND bargain. It is the "ND" in "FRAND," and it lies at the heart of standardization efforts. Standards pair the wide interoperability made possible through potentially anti-competitive, industry-wide selection of patented technical specifications with FRAND's pro-competitive guarantee of unbiased access to the standard. That balance undergirds standardization and seeks to ensure a net benefit to the economy, the SSO, and consumers. *See,*

*e.g.*, ROA.10397 at 70:9-72:18; ROA.10447-10450 at 15:17-18:4; ROA.22421-22423.

The district court's refusal to instruct the jury on the meaning and significance of non-discrimination in the FRAND context left the jury unequipped to determine whether Ericsson breached its FRAND obligations.

### 1. The district court rejected HTC's proposed instruction regarding non-discrimination and provided no guidance on that issue

HTC proposed the following jury instruction to explain the non-discrimination requirement:

> **R. Non-Discrimination Requirement of FRAND**
>
> The non-discrimination requirement of FRAND requires an SEP holder to provide similar licensing terms to licensees that are similarly situated. The financial terms do not have to be precisely identical, because the difference might be explained by other offsetting adjustments in other terms in the license. But, at a minimum, if the difference in terms creates a competitive disadvantage for a prospective licensee, then the offered royalty terms are discriminatory. Discrimination may exist even if preferential treatment is accorded to only one or a few companies.
>
> The non-discrimination prong of FRAND serves to level the playing field among competitors, and to foster entry and innovation from new market participants, by prohibiting preferential treatment that imposes different costs to different competitors. Thus, for purposes of the non-discrimination prong of FRAND, licensees are "similarly situated" if they compete for the purchase or sale of a product or service. It would defeat the purpose of FRAND if a licensor could draw a distinction between entrenched and emerging firms

or between large or powerful and small or weak firms in the same markets, since it would impose artificially increased costs on competition from some firms and inhibit their ability to fairly compete.

ROA.32321-32323. Ericsson's proposed FRAND instruction included a provision resembling part of HTC's instruction, in that both called for considering Ericsson's treatment of similarly situated licensees: "You may consider the royalty rates paid by other companies similarly situated to HTC, as well as the analytical approaches advanced in this case." ROA.32325.

The district court again rejected both proposals, ROA.10864-10865 at 216:5-217:1 (overruling HTC's objection), and instead said nothing beyond its two-sentences declaring an overall lack of rules, ROA.11017 at 19:11-17. The district court's only mention of non-discrimination came in a bare recitation of the terms "fair, reasonable, and non-discriminatory." ROA.11017 at 19:7-10 ("Ericsson made a commitment to ETSI that it would license its patents … on terms that are fair, reasonable, and non-discriminatory, otherwise known as FRAND terms."); *see generally* ROA.11006-11018 at 8:11-20:19, ROA.11035-11039 at 37:24-41:7 (final instructions making no other reference to non-discrimination).

### 2. The district court's refusal to instruct on non-discrimination is reversible error

The district court may have had discretion to provide less detail than HTC's proposed instruction, but it erred by refusing to provide *any* legal guidance to help

the jury evaluate non-discrimination. Ericsson's FRAND obligation includes a separately enforceable non-discrimination requirement that the jury had to consider in deciding whether Ericsson was in breach. If "non-discrimination" permits some degree of variation between economic terms for different licensees, the jury needed guidance on what reasons for disparity are legally acceptable and how much disparity is permissible. That was far from obvious to lay jurors. HTC's proposed instructions would have satisfied that need, and they again satisfied this Court's three-part test.

*First*, HTC's instruction on non-discrimination was a substantively correct statement of law. The Federal Circuit has held that courts should instruct juries on their "obligation" to consider an SEP holder's actual FRAND promises and not just make generic reference to the fact of a FRAND agreement. *See D-Link*, 773 F.3d at 1231. The district court was therefore required to go beyond its generic reference to FRAND and explain what each part of Ericsson's FRAND pledge entails, including the non-discrimination requirement.

HTC's proposal met that obligation. Ericsson's agreement with ETSI requires nondiscriminatory licensing of Ericsson's cellular SEPs, and another court considered that same provision and read it as premised on the royalty terms offered to "similarly situated" licensees. *TCL*, 2018 WL 4488286, at *29-33. Both sides' proposed instructions accordingly directed the jury to consider treatment of similarly

situated licensees. ROA.32321-32323 (HTC), ROA.32324 (Ericsson). In other contexts where the primary objective is protecting competition, this Court has concluded that direct competitors qualify as "similarly situated" despite differences in the size or offerings of the competing companies. *See Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous.*, 660 F.3d 235, 239-40 (5th Cir. 2011) (rejecting argument that taxi companies of different size were not "similarly situated" and concluding that an ordinance focused on company size "treat[ed] similar businesses differently" for equal protection purposes); *Sharron Motor Lines, Inc. v. United States*, 633 F.2d 1115, 1117 (5th Cir. 1981) (concluding that common carriers were "similarly situated" and reversing agency action that discriminated between them because the carriers would compete for the same business despite differences in their proposed service routes). That reading of "similarly situated" aligns with the focus of HTC's proposed instruction on competition concerns associated with standardization and the pro-competitive role of the non-discrimination requirement.

Both parties viewed ██████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ They did so for good reason. Industry standards have great potential to stifle competition. *Broadcom*, 501 F.3d at 314. And the Supreme Court has emphasized that standardization is permissible only when "conducted in a nonpartisan manner." *Allied Tube*, 486 U.S. at 506-

07. The non-discrimination requirement serves the pro-competitive aims behind FRAND licensing, and HTC's proposed instruction would have provided necessary context for understanding how the non-discrimination requirement should be understood and applied.

*Second*, HTC's proposed instructions on non-discrimination were not substantially covered elsewhere in the jury charge as a whole. The district court's instructions to the jury mentioned non-discrimination only once, in its rote recitation of the phrase "fair, reasonable, and non-discriminatory." ROA.11017 at 19:7-10. The court's terse guidance on evaluating breach of Ericsson's FRAND obligation did not mention non-discrimination at all, ROA.11017 at 19:11-17, and the instructions as a whole provided the jury no compass for understanding or applying Ericsson's contractual duty to provide nondiscriminatory license terms.

*Third*, non-discrimination was a critical issue at trial, and the district court's failure to instruct on that issue seriously impaired HTC's case. The jury heard extensive evidence of discrimination between the royalty terms Ericsson offered to HTC and those Ericsson afforded to competing handset producers.

HTC presented an analysis comparing Ericsson's offers to HTC with the terms of parallel license agreements between Ericsson and several competing manufacturers, █████████████████████████████████████████████████████████████

For its part, Ericsson defended its offers by focusing on ███████████ ██████████████████████████████████████████████████████ ████████████████████ In so doing, Ericsson relied on an erroneous view of non-discrimination—███████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████. ███████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

[REDACTED]

Without instructions on non-discrimination, the jury lacked guidance on the pro-competitive role and legal significance of that cornerstone requirement in the FRAND licensing system, not to mention how it should be applied in this case. The jury was not instructed to consider competitive harm to HTC [REDACTED] [REDACTED] due to Ericsson's practice of effectively [REDACTED] [REDACTED]. The fact that [REDACTED] did not establish *non*-discrimination. Even if the jury managed to intuit on its own that non-discrimination is a separate FRAND requirement, the jury may have assumed it was satisfied by the "fact[ ] and circumstance[ ]" of [REDACTED] [REDACTED] Here too, the absence of any instruction on non-discrimination indicated to the jury that it was free to make up its own rules.

\* \* \*

In sum, the district court's minimal instructions to the jury on both the "FR" and "ND" components of FRAND compliance were insufficient as a matter of law and as applied to the facts of this case. The instructions failed to mention, much less substantively explain, key legal principles of patent valuation and non-discrimination that bore on whether Ericsson breached its contractual obligation to offer HTC

fair, reasonable, and nondiscriminatory license terms. The jury therefore was not adequately guided in its ultimate FRAND analysis.

Not surprisingly, the jury expressed *actual confusion* during deliberations about whether Ericsson violated FRAND. *See* ROA.11052 at 54:10-19 (reciting note ████████████ that expressed "great difficulty in getting the jurors to agree on what [Question 1] is asking"). That fact confirms that the judgment cannot stand. *See Horton v. Buhrke*, 926 F.2d 456, 461 (5th Cir. 1991) (remanding based on insufficient jury instructions and observing that "[o]ur conclusion is buttressed by the jury's conduct during its deliberations, evidencing some confusion").

This Court should therefore vacate the judgment based on the jury's answer to Question 1 and remand for a new trial on whether Ericsson breached its contractual duties by failing to offer HTC FRAND licensing terms.

## II. If the Court remands on HTC's breach-of-FRAND claim, it should also remand on Ericsson's related counterclaim for a declaration of FRAND compliance

After trial, the district court granted Ericsson's counterclaim for a declaration that its December 2016 and June 2018 royalty offers—from which it never moved—affirmatively complied with FRAND. ROA.35059-35073; ROA.3150-3155.

In so doing, the district court recognized that Ericsson's counterclaim and HTC's breach-of-contract claim raised overlapping factual issues and that any ruling on Ericsson's counterclaim must defer to the jury on all such issues. ROA.35064 at

[CL3-CL4] (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)), ROA.35068-35069 at [CL16] (discussing the jury's presumed conclusions). That overlap was substantial—the jury answered whether HTC demonstrated by a preponderance of the evidence that Ericsson's offers *did not comply* with FRAND, and the district court later addressed whether the same offers affirmatively *complied* with FRAND. No additional evidence was presented after trial.

The declaratory judgment on Ericsson's counterclaim thus fundamentally depended on the jury's predicate findings on Question 1. Because the district court's erroneous instructions undermined the jury's resolution of Question 1, those errors (along with other errors in the district court's analysis, including its erroneous allocation of the burden of proof to HTC) also undermined the district court's declaratory judgment premised on that verdict.

The district court indicated it would have held that Ericsson complied with its FRAND obligation "even in the absence of [the] verdict" on Question 1. ROA.35064 at [CL4]. But that statement cannot insulate its ruling from vacatur on the underlying jury claim. As the district court recognized, "[w]here there are overlapping factual issues that relate to a claim tried to a jury and a claim to be resolved by the court, the court must conduct the jury proceeding first and defer to the jury's finding on any overlapping factual issues." *Id.* at [CL3] (citing *Beacon Theatres*, 359 U.S. at 510). The district court's statement that it would have reached the same conclusion on

Ericsson's counterclaim without the verdict did not remove its obligation to try all overlapping factual issues to a jury, and defer to that jury's findings, before rendering its own decision on any related issues, if any, properly decided by the court. It is beyond dispute "there is substantial overlap between the factual issues" presented by HTC's claim for breach of FRAND and Ericsson's declaratory judgment counterclaim. ROA.35064 at [CL4]. Thus, if this case is remanded for reconsideration with the benefit of proper instructions on Question 1, the district court must withhold judgment on Ericsson's counterclaim until the new jury has decided the overlapping issues. If it does not also submit that counterclaim to the jury, the district court must at least defer to that new jury's findings—just as it was bound to do in its original decision.

Accordingly, this Court should vacate the district court's declaratory judgment on Ericsson's counterclaim to account for new findings by an adequately instructed jury. *See Sanders v. City of Newport*, 657 F.3d 772, 783-84 (9th Cir. 2011) (vacating for reconsideration of claim after retrial before a properly instructed jury on related jury question).

## III. The district court committed independent legal error in its post-trial ruling on Ericsson's FRAND counterclaim

In its post-trial ruling on counterclaim 1, the district court held—as a conclusion of law—that Ericsson's licensing offers to HTC affirmatively satisfied

Ericsson's FRAND obligation. ROA.35072 at [CL25]. In so doing, the court committed legal error requiring reversal, even apart from the erroneous jury instructions.

FRAND's non-discrimination requirement must mean something, and the district court never stated what meaning it attributed to that term. Given the acknowledged, ██████████████ between ████████████ to HTC and several of its competitors, the district court could not hold those terms nondiscriminatory as a matter of law.[5]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

---

[5] "Under Section 2 [of the Clayton Act], a discrimination is simply a difference in price in reasonably contemporaneous sales." Peter E. Halle & J. Clayton Everett, Jr., 7 *Business & Commercial Litigation in Federal Courts* § 75:38 (4th ed. 2018).



HTC did not contend that it was entitled to most-favored-customer terms or that tiny differences were unlawful. ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████

The district court acknowledged that evidence. ROA.35069 at [CL18]. Yet the court omitted those manufacturers from its own table of license terms.

ROA.35070. It suggested that "many" or "several" of the licenses above were not comparable because they included lump-sum payments and cross-licensing provisions that complicated apples-to-apples comparisons without "economic analysis to translate into an effective, one-way royalty rate." *See* ROA.35071-35072 at [CL22-23]. The court ignored, however, that both parties' experts ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████.[6] The evidence thus supported using ██████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████

That record is fundamentally incompatible with the district court's resolution of Ericsson's counterclaim. The district court nonetheless held that Ericsson's offers to HTC were nondiscriminatory as a *conclusion of law*. *See* ROA.35072 at [CL25]. The correct legal standard for assessing non-discrimination turns on the competition

---

[6] The district court also suggested, without specifying, that "several of the companies identified by HTC had a different geographical scope of sales, and therefore were not similarly situated to HTC." ROA.35071. But the court did not deny significant market overlap. HTC sells its products worldwide, and ████████████████████████████████████████████ all of which likewise operate worldwide.

concerns at the root of the FRAND bargain and requires similar licensing terms to similarly situated licensees—those that compete for the purchase or sale of a product or service. Discrimination may exist even if preferential treatment is accorded to only one or a few companies. ███████████████

████████████████████████████████████

████████████████████████████████████

█████████████

Following its 'no rules' approach to the jury instructions, the district court likewise concluded as a matter of law that Ericsson's offers were fair and reasonable. *Id.* But in so doing, the court failed even to mention apportionment, much less evaluate whether Ericsson's proposed royalties encompassed value beyond that solely attributable to its SEPs.

For those additional reasons, the Court should vacate the district court's judgment resolving Ericsson's counterclaim as a matter of law and remand for reconsideration under the correct standards for assessing discrimination and apportionment.

## IV. The district court erred by excluding opinions from Ericsson's previous expert regarding the royalty terms Ericsson offered to other licensees

The district court prohibited HTC from addressing expert evidence proffered by Ericsson in previous FRAND-licensing disputes. ROA.3005 (granting Ericsson's motion *in limine* No. 13). In those earlier matters, Ericsson retained an expert witness who calculated, and presented on Ericsson's behalf, unpacked one-way royalty terms

for several of the same licenses at issue here, ████████████████████

████ That expert's results differed from those presented by Ericsson's expert in this case, but the district court invoked hearsay to preclude HTC from exploring such discrepancies or otherwise raising the prior expert's calculations. ROA.9608-9610 at 25:13-27:17. Ericsson's prior expert testimony was not hearsay, and the district court's ruling was incorrect.

This Court reviews evidentiary rulings for abuse of discretion. *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1092-93 (5th Cir. 1994). A district court abuses its discretion when an evidentiary ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Hinojosa v. Butler*, 547 F.3d 285, 292 (5th Cir. 2008). When evidence has been wrongly excluded, vacatur is warranted if the erroneous ruling affected a party's substantial rights. *Manville*, 27 F.3d at 1093.

[redacted]

Rather than allowing HTC to use Ericsson's earlier royalty calculations even to cross-examine Ericsson's new expert, the district court categorically excluded all reference to ▓▓▓▓▓▓ opinions as hearsay. ROA.9609-9610 at 26:19-27:17. According to the district court, the opinion of a party's expert retained to testify in prior litigation is somehow "not an admission from the party that puts them on the witness stand" absent a showing of an agency relationship beyond hiring and sponsoring as an expert. ROA.9610 at 27:2-17. That was legal error.

Under this Court's precedent, ▓▓▓▓▓▓ earlier expert testimony was admissible as a non-hearsay statement of Ericsson under Federal Rule of Evidence 801(d)(2)(C). *See Collins v. Wayne Corp.*, 621 F.2d 777, 781-82 (5th Cir. 1980), *superseded on other grounds, as recognized by Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). In *Collins*, this Court held that an expert retained by a party to investigate an issue, prepare a report, and provide testimony was "performing the function [the party] had employed him to perform" and therefore deemed that testimony admissible as an admission of the party. *Id.*

That same analysis applies here. ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

In providing those opinions, █████████ was performing the function Ericsson had employed him to perform, and, under *Collins*, his conclusions were admissible as non-hearsay admissions under Rule 801(d)(2). The district court erred as a matter of law when it excluded that evidence.

The error was not harmless. As discussed above, non-discrimination was a central issue, and one already erroneously skewed against HTC. The jury's task included determining whether the royalty terms Ericsson offered to HTC were discriminatory compared to those ██████████████████████████████. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

      ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

First, most of the numbers that Mills presented to the jury were closer to Ericsson's offers to HTC than ████████ ████████████████████ That reduced the apparent discrepancies ███ ██████████████████████████████ which reduced the appearance of discrimination in Ericsson's proffered evidence. Second, the district court's exclusion of Ericsson's past, contrary admissions prevented HTC from exploring an entire field of "legitimate impeachment" during cross-examination on a pivotal issue. *See* [ROA.9599](#) at 16:3-14. Allowing the jury to hear that Ericsson had previously hired an expert who produced different ████████████████ ████████████████ would have substantially undermined Ericsson's evidence and credibility on non-discrimination. Non-discrimination was a central, determinative issue for the jury to decide as part of HTC's breach-of-FRAND claim, and the

district court seriously harmed HTC's case by foreclosing a powerful line of attack against the primary evidence for Ericsson's defense on that issue.

The district court thus erred as a matter of law when it precluded HTC from cross-examining Mills regarding ███████████████████, and that error impaired HTC's substantial rights to make its case at trial. That error therefore warrants remand so that HTC can fully pursue its case at trial, particularly in combination with the other errors affecting the jury's verdict on Question 1.

## V.     If the Court vacates and remands on the merits, it should also vacate the prevailing-party determination and costs award

The district court deemed Ericsson the prevailing party "in light of the jury's verdict and the Court's finding that Ericsson complied with its FRAND assurance to HTC," ROA.3163, and therefore awarded taxable costs to Ericsson, ROA.3401. If the Court vacates or reverses either of those determinations, it should also vacate the prevailing-party determination and costs award. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 891 (5th Cir. 2014) (remanding to reconsider costs award with case remanded on the merits).

## CONCLUSION

The Court should vacate the judgment on HTC's breach-of-FRAND claim and on Ericsson's related counterclaim for a declaration of FRAND compliance and remand for further proceedings on both.

Respectfully submitted,

PERKINS COIE LLP

by <u>s/ David J. Burman</u>
David J. Burman

*Counsel for HTC Corp. and HTC America, Inc.*

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Appellate Procedure 25 and Fifth Circuit Rule 25, I certify that I caused this brief to be served via the Fifth Circuit's CM/ECF system on counsel of record for all parties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 10, 2019                    s/ David J. Burman
                                               David J. Burman

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, this document contains 12,979 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word 2016 and 14-point Times New Roman type.

Dated: October 10, 2019     s/ David J. Burman
               David J. Burman

## CERTIFICATE OF AUTHORITY

I certify that I have the authority of my co-counsel David J. Burman to file this document with his electronic signature. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 10, 2019                <u>s/ Andrew T. Dufresne</u>
                                       Andrew T. Dufresne